## BRANCH, SONS & COMPANY *vs.* PALMER.

1. While parol testimony is not admissible to vary the terms of a written contract, it is admissible to show the existence of a custom of the trade or business in which the contract was made, of such universal practice as to justify the conclusion that it became, by implication, a part of the contract.

2. The existence of such a custom is a question for the jury.

3. Where the contract was for 600 bales of cotton, to be delivered in different lots and at different times, if upon the shipment of the first lot the vendor had a right to draw for the amount so due, and his draft was not paid, he was not bound to carry out and complete the contract.

4. A sale of cotton for future delivery, where both parties knew that the vendor expected to purchase to fulfil his contract, and to put no skill, labor or expense therein, and none entered into the consideration thereof, but that it was a speculation on chances, would be illegal; but if the cotton was to be bought and delivered at once,

and skill, labor or expense entered into the contract, it would be valid.

5. The verdict was supported by the evidence.

Evidence. Contracts. Custom. Verdict. Before Judge SIMMONS. Bibb Superior Court. April Term, 1879.

Branch, Sons & Co. sued Palmer. The declaration alleged that he had contracted with them to furnish to certain parties in Liverpool certain cotton, to-wit: "The said Palmer on the twenty-eighth day of October, 1876, sold your petitioners three hundred bales of cotton of an average weight of five hundred pounds each bale, two hundred of said bales being good ordinary at $9\frac{1}{2}$ cents per pound, and one hundred bales being middling at $10\frac{5}{8}$ cents per pound; and on October 31st, 1876, two hundred other bales of cotton—one hundred of which being good ordinary at $9\frac{3}{4}$ cents per pound, and the other hundred being strict good ordinary at 10 cents per pound; and on November 1st, 1876, one hundred other bales of cotton, low middling, at $10\frac{1}{4}$ cents per pound; all of said cotton was to be delivered free on board by the said Palmer for the price above stated." The breach alleged was that the price of cotton having risen, Palmer refused to deliver the cotton, although he had possessed himself of it and was in the very act of delivering it under the contract, thereby compelling plaintiffs to buy other cotton at a higher price.

The defendant pleaded the general issue, and that the contract was illegal because it was a mere speculation on chances—each party knowing that no skill or labor was to enter into it, but that the cotton was simply to be bought and sold as a speculation on future prices.

On the trial it appeared that defendant shipped the first three hundred bales and drew on plaintiffs with bill of lading attached. This draft was dishonored, and thereupon defendant refused to deliver the three hundred bales

or to buy and deliver any more. The jury found for the defendant. Plaintiffs moved for a new trial on the following, among other grounds:

(1.) Because the court admitted testimony to show a universal custom among cotton buyers of drawing with bill of lading attached as soon as cotton was delivered to the railroad. (Plaintiffs' counsel insisted that the contract was in writing, and could not be varied by parol testimony.)

(2.) Because the court refused to construe the contract. (The court stated to the jury that under the contract delivery would have to be made at the places specified before payment could be demanded, unless there was such a custom of the trade as gave defendant the right to draw upon delivery to the railroad. He then defined the kind of custom which would by implication enter into the trade, and left the jury to say whether it existed or not.)

(3.) Because the court charged as follows: " If the proof satisfies the jury that, under a universal usage or custom, Palmer had the right to draw on plaintiffs at sight, attaching the railroad receipt for the cotton to the draft, the refusal or failure of plaintiffs to pay the draft on presentation released Palmer from all liability to send forward the cotton against which the draft was drawn."

(4.) Because the court charged, in substance, that if the contract was for six hundred bales, and plaintiffs ought to have paid the draft for the first three hundred, but failed to do so, defendant was not bound to forward the remaining three hundred.

(5.) Because the court charged that "if both parties were aware that Palmer expected to purchase to fill this contract, and to put no skill and labor or expense into the contract, and that the same did not enter into the consideration of it, but that the same was a speculation on chances, then it was an illegal contract."

(6.) Because the verdict was contrary to law and the evidence.

The motion was overruled, and plaintiffs excepted. For the other facts see the decision.

BACON & RUTHERFORD, for plaintiffs in error.

LANIER & ANDERSON, for defendant.

JACKSON, Justice.

This suit was brought to recover damages from Palmer by Branch, Sons & Co. for failure to deliver cottons purchased by the latter from the former. Under the instructions of the court, the jury found for the defendant, and a motion for a new trial being refused to plaintiffs, they bring their case to this court.

1. The defendant refused to deliver 300 bales of cotton already bought and shipped, and to buy and deliver any more because plaintiffs dishonored his draft on them in Augusta, the defendant being a resident of Macon, for fourteen thousand dollars, which he had drawn on them on account of the 300 bales so bought and shipped on board the cars at Macon. The contract is in the form of letters between the parties, and the cotton was to be delivered "free on board"—"F. O. B." being the initials used. It was to be sent to different ports — such as Charleston, Port Royal, etc., etc. The draft was drawn, with bill of lading attached, when the cotton was shipped on the cars, and the court allowed evidence to show that such was the universal custom of the trade. The plaintiffs objected and excepted thereto, and also to the charge of the court to the effect that if such was the custom the draft should have been paid by Branch, Sons & Co., unless the words of the contract took this case altogether out of the custom.

Without going into the common law or our sister states for the law on this subject, it is enough to refer to our own Code, which embodies the substance of the common law as construed by our own earlier decisions on the doc-

trine in respect to customs of this sort, and the effect thereof upon contracts. Section 4 of the Code declares, under paragraph 1, which is on the subject of "Laws of force in this State," that "The custom of any business or trade shall be binding only when it is of such universal practice as to justify the conclusion that it became by implication a part of the contract." So that it will be seen that the custom of a trade is admissible, not as ordinary parol evidence, but as law—entering into the contract just as any other law does. It is not dependent on the rule that parol evidence is inadmissible to vary a writing, nor inconsistent therewith, but upon the ground that the law makes the custom part of the contract, and when the custom is so universal as to become the law of the trade, it becomes by implication a part of the contract, and the contract is to be construed thereby just the same as if it had been inserted therein. Of course, custom can only be proved by word of mouth from the men engaged in the business, and evidence thereof is necessarily in parol, but it stands on quite a different footing from parol evidence of one standing by when a written contract is made, and who undertakes by his uncertain memory to add to or vary the thing set down in black and white at the time the contract was made.

We think, therefore, that the court was right to admit the evidence and to charge the jury thereon to the effect above indicated and as set out in the record.

2. Whilst it is the duty of the court to construe a written contract, whether exhibited by one or by twenty letters, yet whether the custom is established or not by proof is matter for the jury, and therefore the court was right to submit the question to the jury, especially as it appears to us by no means clear exactly what these parties meant by the words and symbols used in the trade, and ordinary parol explanation, as well as the custom of the cotton trade, was essential to decipher and understand them.

3. The plaintiffs contend further that there were several

contracts for cotton, and not one contract, and that there-
fore the court erred in its charge that defendant had the
right to decline to buy further for plaintiffs after the dis-
honor of his draft.   In the view we take of the case, the
contract, as a whole, is one.   It is so declared on by the
plaintiffs.   It branches out in different specifications, but
being sued as one, and springing from one source, the
various specifications should be construed together.   It
was an agreement on the part of Palmer to buy for
Branch, Sons & Co. as the latter gave him orders, and as
specifications and prices suited.   Even if in some respects
the contracts may appear several, yet they are depend-
ent—dependent covenants—promises resting on mutual-
ity—and to be kept if both sides are faithful to the re-
spective undertakings.   Palmer was dependent upon
Branch, Sons & Co. for money to buy, just as the latter
were dependent on their Liverpool correspondents for
larger funds for their more extensive purchases.   There-
fore, when his draft was dishonored, he had the right to
refuse longer to carry out any part of the contract to buy;
because he could not tell when another draft, with the
proceeds of which he expected to meet his bank account
at home, would be dishonored too.

So that we think the court submitted the law on this
point fairly and fully to the jury.

4. In respect to the legality or illegality of the contract
on the subject of futures, the court put the question also
substantially right before the jury.   The charge was in sub-
stance, that if the cotton was a sale by Palmer to plaintiffs
to be delivered at a future day, or that both parties knew
that Palmer expected to purchase to fill this contract, and to
put no skill, labor or expense therein, and none entered into
the consideration thereof, but that it was a speculation on
chances, then the contract would be illegal; but on the
other hand, if the cotton was to be bought immediately
and delivered when bought, and defendant's skill and labor
entered into the contract, thus to be at once carried out,

then it was legal. This charge is the substance of section 2638 of our Code, and of course must be law.

Law and facts so entered into the question that the court properly left it to the jury. Code, §2754.

5. The exceptions based on refusals to charge as requested are controlled by the points already ruled; the evidence is sufficient to support the verdict, and the presiding judge approved the finding; therefore, as often ruled, we do not interfere.

Judgment affirmed.