37023. RUSSELL et al. v. FULTON NATIONAL BANK OF ATLANTA.

SMITH, Justice.

In 1969, appellant Glynette Russell and the decedent were divorced. On February 10, 1969, appellant and the decedent entered into a consent order providing for the maintenance and support of their daughter, then seven years of age. The consent order provided that the decedent would pay $366 per month, plus medical and dental expenses, and maintain a $10,000 life insurance policy for the benefit of the child. All of these provisions would remain in effect until the child "arrives at age 21, marries, dies or becomes self-supporting." The order also provided that the decedent would pay for the child's college education at a state university. Finally, the wife (and child) released the decedent from all other support obligations and waived any rights to seek modification. The consent order did not include a provision specifically addressing the rights of the parties in case of the decedent's death. The decedent died on May 22, 1979.

On April 10, 1980, appellants, the former wife and child of the decedent, brought this action for specific performance of the consent order, alleging that the executor has failed to pay them in accordance with the consent order. See *Brooks v. Jones,* 227 Ga. 566, 570 (181 SE2d 861) (1971). The trial court, citing *Schartle v. Trust Co. Bank,* 239 Ga. 248 (236 SE2d 602) (1977), dismissed the complaint. The court stated: "In arriving at this conclusion the Court has also considered the case of . . . *Ramsay v. Sims,* 209 Ga. 228 which appears

to hold a contrary position, however, the Court has resolved this conflict in favor of the ruling in the *Schartle* case, supra." We reverse.

In *Clavin v. Clavin,* 238 Ga. 421, 423 (233 SE2d 151) (1977), this court held: "The law does not require that a father provide for the support of his children after his death. See Code Ann. § 113-106 (Rev. 1975). Public policy, of course, favors the support of minor children by the father's estate after his death. See, e.g., Code Ann. § 113-903 (Rev. 1975) (Rules of Inheritance); Code Ann. § 113-210 (Rev. 1975) (Mistake of Fact in Will); Code Ann. § 113-107 (Rev. 1975) (Charitable Devises); Code Ann. § 51-705 (Rev. 1974) (Homestead); Code Ann. § 113-1002 (Rev. 1975) (Year's Support). However, the fact remains that, despite this strong public policy, a father is not required by law to create an estate for his minor children.

"The same is true with respect to a divorced father and a child support decree. The decree merely replaces the father's statutory duty of support. [Cit.] Absent some express, voluntary provision in the decree, the decree will not be enforced after the death of the father. [Cits.]" It is noteworthy that the authority cited by the court in support of its position regarding a "voluntary provision in the decree" includes the case of *Ramsay v. Sims,* supra. The *Clavin* decision implicitly reaffirmed our holding in *Ramsay.*

In *Schartle v. Trust Co. Bank,* supra, we distinguished the language of the agreement in *Ramsay* from that contained in the separation agreement of Mr. and Mrs. Schartle. We noted that the separation agreement in that case was concerned solely with support for the wife "for her natural life or until she remarries," whereas "the court [in Ramsay] based its finding on the several provisions for child support which were to continue until the children had reached 21 years." *Schartle,* supra at 249.

The position that the language of the agreement in *Ramsay* was sufficient to create an obligation binding upon the father's estate was again reaffirmed in *Davenport v. Davenport,* 243 Ga. 613, 617 (255 SE2d 695) (1979), wherein the court, citing *Ramsay,* states: "In practice . . . this court has forced the husband's estate to make periodic payments of alimony or child support only when the husband assumed this obligation for his estate through agreement." See also Hutchings v. Bates, 406 SW2d 419 (Tex. 1966); Simpson v. Simpson, 108 S2d 632 (Fla. App. 1959); 24 AmJur2d 971, Divorce and Separation, § 856.

In view of the above authorities, we must reject appellee's contention that "the *Ramsay* case is no longer the law in Georgia as it relates to the intention of parties to a separation agreement." *Clavin v. Clavin,* supra, and *Laughridge v. Laughridge,* 219 Ga. 415 (133 SE2d 884) (1963), cited by appellee, are not dispositive of the case at

bar as they were appeals from an adverse divorce decree, and did not involve a consent order. The latter is a voluntary undertaking; the former is not. See *Wimbush v. Fayette Finance Co.,* 156 Ga. App. 500 (275 SE2d 99) (1980); *Collins v. Collins,* 148 Ga. App. 103, 105 (250 SE2d 870) (1978). Appellants do not challenge our holding in *Clavin,* supra at 424, that "absent a voluntary obligation of the father," his duty of support ceases upon his death. Appellants merely contend that the consent order in this case evinces an intention on the part of the father to assume specific support obligations until his minor child "arrives at age 21, marries, dies or becomes self-supporting," notwithstanding his death.

The pertinent language in the consent order is essentially the same as that employed in the *Ramsay* agreement. Under the consent order, the father voluntarily assumed a support obligation which exceeded his legal duty. See *Clavin v. Clavin,* supra at 422-423, which holds that a life insurance provision "is enforceable only when it has been agreed to by the father in the first instance." Construing the consent order as a whole, it is clear that the father intended to provide for his child after his death. "If it was intended that the contract would terminate upon the death of the husband, it should have so stated [Cit.]" *Ramsay v. Sims,* supra at 237.

" 'Contracts in settlement of claims for alimony and support of minor children stand upon the basis of other contracts to the extent that they are subject to construction by the court. In construing such contracts the intention of the parties should be arrived at and given effect. Code § 20-702; *Brown v. Farkas,* [195 Ga. 653 (25 SE2d 411)].' *Ramsay v. Sims,* 209 Ga. 228, 237 (71 SE2d 639) (1952)." *Goodrum v. Fuller,* 237 Ga. 833, 835 (229 SE2d 639) (1976). The judgment of the trial court is therefore reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed. All the Justices concur, except Jordan, C. J., and Hill, P. J., who dissent.*

DECIDED APRIL 10, 1981 —
REHEARING DENIED MAY 5, 1981.

*Read, Huddleston & Medori, Eugene A. Medori, Jr.,* for appellants.
*Arnall, Golden & Gregory, William R. Harp,* for appellee.

HILL, Presiding Justice, dissenting.

Lawyers drafting or approving separation agreements or consent orders providing for alimony or child support will be well

advised to include a provision specifying what shall happen in the event of the death of the payor. The majority has found that an agreement providing child support until the child "arrives at age 21, marries, dies or becomes self supporting," the boilerplate language of child support, is evidence that the parties intended the obligation to pay child support to survive the death of the payor. Moreover, the majority has found that a life insurance provision is not sufficient evidence as to the intent of the parties to overcome the intent manifested by the boilerplate language. Let me pose this question: Why include a life insurance provision if, following the death of the payor, the monthly payments are to continue as before? I would have thought such provision to be sufficient evidence of the intent of the parties to overcome boilerplate. I therefore respectfully dissent.