## S90A1660. GRAVES v. THE STATE.
### (399 SE2d 922)

FLETCHER, Justice.

Jamie Lee Graves was convicted of malice murder, armed robbery and burglary. He was sentenced to concurrent terms of life imprisonment for murder and armed robbery, and a term of years for burglary.[1]

The victim, Kathryn Stryker, lived with her invalid mother, Wessie Jenkins, in the defendant's neighborhood in Columbus, Georgia. The defendant, who was 16 years old at the time of the crimes, often performed yard work and odd jobs for them.

When the victim's pastor was unable to reach her for several days, he asked the Muscogee County Sheriff's Department to investigate. A deputy sheriff found an accumulation of newspapers on the victim's front porch. Entering the house, he found Wessie Jenkins in her bedroom, gasping for breath. Several of Mrs. Jenkins' knuckles had been cut off and she was lying in a pool of blood.[2] The deputy then found the victim on the kitchen floor. The upper portion of her head had been completely beaten in, and a butcher knife was buried in her chest.

While interviewing the victim's neighbors, officers learned that the defendant had raked leaves for the victim on the last day the victim had been seen in the neighborhood. Hoping to establish the time of death, officers asked the defendant to come to the police station for an interview. According to the testimony of the interviewing

---

[1] The crime was committed in October 1976. The defendant was indicted on November 23, 1976, and his trial began February 15, 1977. The state sought the death penalty, but the jury's verdict, rendered on February 17, 1977, did not recommend the death penalty. The defendant filed his notice of appeal on March 14, 1977. For reasons neither found in the record nor known by this court, the record was not filed in this court until September 21, 1990. Pursuant to order of this court entered on October 12, 1990, the transcript was prepared and filed in this court on November 16, 1990. The case was submitted on briefs on November 2, 1990.

[2] Mrs. Jenkins lingered for several weeks before dying, but was not able to tell police what had happened.

officer, the defendant made a number of inconsistent, but non-incriminating, statements about last seeing the victim and what he had done on that day. The officer terminated the interview and summoned the defendant's mother to the police station. When she arrived, the officer explained that the defendant had made conflicting statements about seeing the victim, and then advised the defendant and his mother of the defendant's *Miranda* rights. The mother stated that she would like to have the defendant's juvenile court service worker present. After the court service worker arrived, the police officer again administered the *Miranda* warnings. The defendant and his mother stated that they understood his rights. The defendant then told police that his friend, Jerome Bowden,[3] had stolen his pellet gun and used it to beat the victim. The defendant also stated that Bowden had stolen a number of items from the victim and given them to the defendant for safekeeping.

Executing a search warrant, police discovered a pellet gun hidden under the back porch of the defendant's house. A hair found on the gun was consistent with the victim's hair. Blood was found on the gun, but of an amount too small to type. Jewelry identified as belonging to the victim was discovered hidden throughout the defendant's house. Police also found a note pad inscribed with the victim's name hidden in a stove on the defendant's back porch. Later, police recovered a television which the defendant had sold to a friend shortly after the victim's death; a television repairman identified it by the serial number as a television he had repaired for the victim.

Medical evidence showed that the perpetrator dealt four severe blows to the victim's skull, causing it to split. The medical examiner testified that a pellet gun could have been the object used to inflict these injuries. The medical examiner also testified that multiple skull fractures caused the victim's death, and opined that she had been stabbed after she was dead.

The defendant testified that Jerome Bowden stole his pellet gun and used it to beat the victim to death. The defendant further testified that Bowden stabbed the victim because "he did not want her to suffer." The defendant denied participating in the murder, but admitted he had hidden the objects stolen from the victim for Bowden.

1. While conceding that a motion for mistrial is not ripe prior to impanelling the jury, *Ferguson v. State*, 219 Ga. 33 (3) (131 SE2d 538) (1963), the defendant argues that the trial court erred in denying his motion for mistrial made when a prospective juror stated, "I feel like [the defendant's] guilty," during voir dire.

---

[3] Bowden was convicted of the murder of Kathryn Stryker and sentenced to the death penalty. *Bowden v. State*, 239 Ga. 821 (238 SE2d 905) (1977).

Following this statement the record shows that the trial court immediately instructed the prospective jurors to respond only to the district attorney's questions and not to make extraneous statements. The defendant then moved for a mistrial. The trial court did not rule on this motion, but called a bench conference which was not recorded. When voir dire resumed the state successfully moved to strike the juror in question for cause. The defendant did not ask for curative instructions or request that he be permitted to examine the other jurors to determine whether they had been influenced by this remark. Under these circumstances, we find no reversible error.

2. The defendant argues that his statement to the police was not voluntary because he was not adequately advised of his *Miranda* rights. As detailed above, the record demonstrates the contrary. The defendant was initially interviewed as a witness. After he made inconsistent statements, his mother and court service worker were summoned to the police station. He was advised of his *Miranda* rights twice prior to his statement that he knew the circumstances of the victim's death. Both times the defendant stated he understood his constitutional rights.

The trial court found the statement to be voluntary. This finding is not clearly erroneous.

3. The defendant maintains the trial court erred in charging the law of confession as he did not confess to the crimes charged. However, our study of the record shows that the trial court did not charge the law of confession.

4. The trial court did not err in admitting pre-autopsy photographs taken of the victim. These photographs were relevant to the nature of the victim's wounds and cause of death, and were therefore admissible. *Ramey v. State*, 250 Ga. 455, 456 (298 SE2d 503) (1983).

5. Construing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the defendant guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 7, 1991.

*Dorothy Williams,* for appellant.

*Douglas C. Pullen, District Attorney, E. Carlton Carter, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary H. Hines,* for appellee.