A92A1291. GRAY v. HIGGINS.
(421 SE2d 341)

BIRDSONG, Presiding Judge.
This is an appeal from the order of the superior court granting summary judgment in favor of appellee Anne M. Higgins and denying summary judgment for appellant administratrix.

In October of 1963, pursuant to a settlement agreement made part of a final divorce decree entered in 1964, deceased husband, William E. Gray, agreed to assign and to make his spouse, Anne M. Higgins then Anne M. Gray, the owner of a certain $25,000 whole life insurance policy, and to keep the policy current and in effect. Following the death of the deceased in October, 1989, appellee was informed the policy had been allowed to lapse in 1967, and that neither this policy nor any other $25,000 policy was then in force which named her beneficiary. In May, 1991, appellee brought suit against her former husband's estate seeking $25,000 in damages. *Held*:

1. Appellee is a real party in interest within the meaning of OCGA § 9-2-20 (a). See *Insured Lloyds v. Bobo*, 116 Ga. App. 89, 90 (156 SE2d 518); *Tyler v. Nat. Life &c. Ins. Co.*, 48 Ga. App. 338 (2) (172 SE 747) (generally an action on an insurance policy or written binder must be brought in the name of the legal titleholder, and one other than the person to whom the policy was issued cannot maintain an action thereon in his own name, unless the policy has been duly assigned to him in writing).

2. The settlement agreement, which was incorporated into the divorce decree, pertinently provides as follows: "[William E. Gray] agrees to assign irrevocably to [appellee] before this divorce becomes final, insurance policy No. 707344 . . . in the sum of $25,000. [Appellee] shall be sole owner of said policy, but agrees to maintain the children as beneficiaries during their minority. (First party agrees to maintain an additional policy on his life of not less than $25,000 so long as any of the children are minors. First party further agrees to maintain the second party as primary beneficiary on said policy. When the youngest of the children has reached her majority, first party shall have the right to change the beneficiary on said policy as he sees fit.) [William E. Gray] further agrees to pay all premiums on both policies and to see that they are kept current and in force." (Provisions in parentheses pertain to a second policy not here at issue.)

The portion of the settlement agreement creating an obligation to pay insurance premiums constitutes periodic alimony rather than equitable property division. *Sapp v. Sapp*, 259 Ga. 238, 240 (4) (378 SE2d 674). Absent a "manifest intention of the parties" to the contrary, the obligation to pay periodic alimony terminates on the death of the paying spouse (*Dolvin v. Dolvin*, 248 Ga. 439, 441 (284 SE2d 254)) or of the surviving spouse (*Ramsay v. Sims*, 209 Ga. 228, 233-234 (71 SE2d 639), reversed on other grounds, *Dolvin v. Dolvin*, supra). Compare *Winokur v. Winokur*, 258 Ga. App. 88 (365 SE2d 94); *Rooks v. Rooks*, 252 Ga. 11, 15 (311 SE2d 169) (Weltner, J., concurring). This rule applies "to separation agreements as well as decrees of divorce." *Schartle v. Trust Co. Bank*, 239 Ga. 248, 249 (236 SE2d 602). Additionally, as of the effective date of OCGA § 19-6-5 (b) (Code Ann. § 30-209), periodic alimony also terminates upon the remarriage of the receiving spouse. Appellant has not contested the trial court's holding, pursuant to *Candler v. Wilkerson*, 223 Ga. 520, 521 (156 SE2d 358), that OCGA § 19-6-5 (b), providing for automatic termination of alimony upon remarriage, could not be applied retroactively to this settlement agreement.

(a) A settlement agreement is a contract and the question of its enforceability is for the court to decide. *Graves v. State*, 260 Ga. 779 (399 SE2d 922). Where a settlement agreement is incorporated into a

final decree of divorce, a suit seeking damages for the violation of its terms need not be initiated solely upon the decree; but an action ex contractu may be maintained due to a breach of the settlement agreement. OCGA § 9-2-4; see also *Russell v. Fulton Nat. Bank*, 247 Ga. 556 (276 SE2d 641), overruled on other grounds, *Dolvin v. Dolvin*, supra; *Brooks v. Jones*, 227 Ga. 566, 569 (1) (181 SE2d 861); *Ramsay v. Sims*, supra. Accordingly, the trial court did not err in finding the settlement agreement constituted a valid and enforceable contractual obligation that was incorporated into the final divorce decree.

(b) "Where the parties in a divorce action enter into a settlement agreement, its meaning and effect should be determined according to the usual rules for the construction of contracts, the cardinal rule being to ascertain the intention of the parties. [Cit.] In approving and adopting a settlement agreement, the court adopts the meaning and effect of the agreement as it was intended by the parties." *Cousins v. Cousins*, 253 Ga. 30, 31 (1) (315 SE2d 420); *Anderson v. Larkin,* 190 Ga. App. 283, 284 (378 SE2d 707).

The pertinent terms of this settlement agreement are clear and unambiguous; accordingly, we will look to the settlement contract alone to find the intention of the parties. *Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (359 SE2d 659). Examining the language of the settlement agreement, we find the parties intended that upon the death of William E. Gray the deceased would have kept current and in force a $25,000 insurance policy assigned to and then owned by appellee, and that the requirements for deceased to pay premiums on the policy and to see that it was kept "current and in force," were to be a non-severable part of this agreement. Additionally, the parties intended that the children, during their minority, would be the beneficiaries of this policy (the children have reached the age of majority in this case). Equally clear in this agreement is the parties' inherent intent that after the children had reached the age of majority (which they reached prior to the death of William E. Gray), appellee, being declared the "sole owner" of the policy, would be vested with the sole authority to change the policy beneficiaries and to declare whomever she desired (including herself) to be the beneficiary thereof.

Further, considering the purpose of the settlement agreement and the terms of the document in its totality, we find that the portions of the settlement agreement provisions referring to a specific policy number were incidental to the true contractual intent of the parties and merely served to identify the particular $25,000 policy then in force; but that the true and paramount intent of the parties, at the time the settlement contract was executed and again when it was incorporated into the divorce decree, was that upon the death of William E. Gray some type of $25,000 insurance policy would be current and in force and that ownership of this policy would have been

transferred to the appellee. Accordingly, payment of $25,000 on the death of the deceased was not intended to be "restricted" to the specific policy referred to in the agreement. In fact, the maintenance of a current and in force insurance policy was merely the "financial vehicle" chosen by the parties to provide $25,000 on the death of deceased. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, *it shall be enforced* irrespective of all technical or arbitrary rules of construction." (Emphasis supplied.) OCGA § 13-2-3.

Moreover, assuming arguendo, William E. Gray had intended that his obligation to provide a current and in force policy of insurance for appellee at the time of his death (by means of making periodic alimony payments in the form of insurance premiums) would extend only to a particular policy of insurance, it is clear from the terms of the settlement agreement in its totality that appellee unequivocally intended that, upon Gray's death, she would be the owner of a current and then in force $25,000 policy of insurance, regardless of its particular policy number, and that her intent to this effect was known to William E. Gray both at the time the settlement agreement was executed and when it was incorporated into the divorce decree. In this regard, OCGA § 13-2-4 provides: "The intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party and known to be thus understood by the other party at the time shall be held as the true meaning." Thus, also under this statutory rule, the true meaning of the questioned provision of the settlement agreement is that upon William E. Gray's death there would be current and in force a $25,000 insurance policy of which appellee had previously been invested with ownership.

(c) Consistent with the parties' true intent, appellee would not be limited in recovering as damages only that amount of money that should have been paid as policy premiums. Rather, appellee could seek to recover the policy amount of $25,000, as "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties *contemplated*, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. When this particular settlement agreement was entered and thereafter when it was incorporated into the decree, the parties contemplated, within the meaning of OCGA § 13-6-2, that a breach of settlement contract allowing the policy to lapse and not to be reinstated in any form prior to death of decedent would result in damages in the policy amount ($25,000), and such damages would arise naturally and according to the usual course of things from such a breach.

3. Although *Larson v. Larson*, 226 Ga. 209 (173 SE2d 700) is dis-

tinguishable, the trial court correctly concluded that the breach caused by failure to have a $25,000 policy of insurance current and in force, pursuant to the contractual terms of the settlement agreement incorporated by reference into an unmodified divorce decree, occurred at the time of decedent's death. The legal duties created by the questioned terms of the settlement agreement, as intended by the parties and above discussed, were entire within the meaning of OCGA § 13-1-8 (a). The parties' intent is beyond cavil, and "[t]he character of the contract in such case is determined by the intention of the parties." OCGA § 13-1-8 (b). Although the terms in question required periodic alimony payments during the lifetime of Mr. Gray, the vital obligation imposed thereunder was to keep current and in force a $25,000 insurance policy upon his death. Parties can intend and execute a settlement contract to provide for current and in force insurance upon the obligated party's death that is entire in character, notwithstanding a requirement therein for periodic alimony in the form of policy premium payments. Cf. *Branch, Sons & Co. v. Palmer*, 65 Ga. 210, 215 (3) (83 SE 668) (contract was entire although it contained a stipulation therein for delivery by installments; the contract, as a whole, is one). " 'In determining whether the contract is entire or severable, the criterion is to be found in the question whether the whole quantity, service or thing — all as a whole—is of the essence of the contract. If it appear[s as in this case] that the contract was to take the whole or none, then the contract would be entire.' " *Burns v. Mitchell*, 55 Ga. App. 862 (1) (191 SE 870).

Where the matters specified in the *claim* are the outgrowth of an entire settlement agreement provision, whose vital purpose is to provide a current and in force policy of insurance at the time of death of the obligated spouse albeit policy premiums were to be paid through timely payments constituting in law the payment of periodic alimony, then as against such a *cause of action for breach of contract for failure to provide such a policy* and praying for damages as a result thereof, the applicable statute of limitation begins to run upon and only upon the date of the obligated spouse's death. Cf. *Burns v. Mitchell*, supra. Although " '[i]t is a general and established principle of law that the statute of limitation begins to run from the time the right of action accrues' " (*Rosenstock v. Congregation &c. Achim*, 118 Ga. App. 443, 444 (164 SE2d 283)), in the case at bar, the right of action for which suit was initiated accrued on the date of the obligated spouse's death. As suit was initiated within two years of William E. Gray's death there has been no running of the statute of limitation. See generally OCGA Title 9, Ch. 3, Art. 2.

Additionally, the record before us does not affirmatively establish when appellee first became aware or should have been aware of the lapse of the specific policy incidentally referred to in the settlement

agreement. Moreover, we cannot reasonably infer from the state of the record that appellee knew or should have known of the lapse at some *specific point in time* before receiving notice thereof following the deceased's death. In any event, the breach giving rise to the running of the statute of limitation did not occur until deceased's death for the reasons above discussed.

4. Further, "appellee's claim is not barred by the doctrine of laches. 'The equitable doctrine of laches is not applicable to suits at law . . . (E)ven if the doctrine of laches could be invoked in a suit at law, it could not be invoked during the period during which a statute of limitation would be applicable.'" *Virgil v. Kapplin*, 187 Ga. App. 206, 208 (4) (369 SE2d 808). The case at bar is a suit at law and, additionally, suit was initiated in this case before the expiration of any applicable statute of limitation.

Appellant's other assertions in support of its enumeration of error are equally without merit.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED JULY 16, 1992.

*Glaze, Glaze, Fincher & Brakefield, Gary H. Brakefield, William A. Grabbe*, for appellant.

*Samuel W. Wethern*, for appellee.