McNEILL STOKES AND CAROL C. STOKES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stokes v. Commissioner
Docket No. 15463-91
United States Tax Court
T.C. Memo 1994-456; 1994 Tax Ct. Memo LEXIS 461; 68 T.C.M. (CCH) 705; September 14, 1994, Filed *461 Decision will be entered in accordance with the agreement of the parties and our holding herein for respondent. P, McNeill Stokes, and his former wife, Judy F. Stokes, were divorced by a final decree of divorce entered May 14, 1986. The decree incorporated a settlement agreement between the spouses as to payments by the husband to the wife and a division of property. The settlement agreement provided that the provisions of a temporary order entered Oct. 15, 1985, would remain in effect until Mar. 31, 1987, except where stated to the contrary. One of the provisions of the temporary order was for payment by P to Ms. Judy Stokes of $ 4,800 a month. Held: P is not entitled to deduct under sec. 215, I.R.C. the $ 14,400 paid under the settlement agreement to his former spouse in 1987 as alimony, since the payments do not meet the requirement of sec. 71(b)(1)(D), I.R.C., that the payments not extend beyond the death of the payee spouse. McNeill Stokes, pro se. For respondent: John W. Sheffield, III. SCOTT SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined deficiencies in Federal income taxes and additions to tax of McNeill Stokes and Judy F. Stokes for the calendar *462 years 1984 and 1985 as follows: Additions to Tax
Year
Deficiency
Sec. 6661 1984
$ 9,580
$ 2,395
1985
3,525
--  Respondent determined deficiencies in Federal income taxes and additions to tax of McNeill Stokes and Carol C. Stokes for the calendar years 1987 and 1988 as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Defici-
6653(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6661
ency
1987
$ 8,928
--
$ 446
[1]
$ 2,232
1988
12,858
$ 643
--
--
3,214
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All of the issues raised by the pleadings have been disposed of by agreement of the parties, [1] except whether an amount of $ 14,400 paid by McNeill Stokes (petitioner) to his former wife Judy F. Stokes (Ms. Judy Stokes) in 1987 constitutes alimony as defined under section 71(b) which is deductible under section 215. *463 All of the facts are stipulated and are found accordingly. Petitioners McNeill and Carol Stokes, husband and wife, who resided in Atlanta, Georgia, at the time of the filing of their petition in this case, filed their joint Federal income tax returns for the calendar years 1987 and 1988 with the Internal Revenue Service, Chamblee, Georgia. Petitioner was formerly married to Judy F. Stokes with whom he filed a joint Federal income tax return for each of the calendar years 1984 and 1985 with the Internal Revenue Service, Chamblee, Georgia. Petitioner is a practicing attorney. Petitioner and Ms. Judy Stokes were divorced by order of the Fulton County Superior Court dated May 14, 1986. The Superior Court of Fulton County had issued a temporary order dated October 15, 1985 (the temporary order), which provided in part as follows: (4) * * * the defendant [petitioner] shall pay directly to the plaintiff [Ms. Judy Stokes] beginning with the month of October 1985, the sum of $ 4,800 a month ($ 2,400 on the 1st and 15th of each month) and continue paying said sums each month thereafter until further Order of the Court for the support and maintenance of the plaintiff and the minor *464 child of the parties, Ashley Stokes. * * * (7) * * * The provisions of this Order shall remain in force and effect as the temporary order of the Court in this case until further order.
The temporary order also contained provisions for the custody of the parties' minor child, Ashley Stokes (Ashley), payment of attorneys' fees, payment of existing insurance for medical, life, automobile, and property owned and used by the parties, and maintenance of the obligations on investments owned by the parties that were in force and effect at the time of the hearing, resulting in the issuance of the temporary order. Under the terms of the temporary order, petitioner was granted temporary use of and access to the guest bedroom and kitchen in the residence previously occupied by the couple. The final judgment and decree of divorce entered on May 14, 1986, incorporated the settlement agreement made between the parties dated May 6, 1986 (the settlement agreement). Paragraph 2 of the settlement agreement provided as follows: Except as expressly stated herein, the parties shall continue to be bound by all of the terms and conditions of the Temporary Order of the Court entered October *465 15, 1985, through and including the 31st day of March, 1987. Said Temporary Order is attached hereto as Exhibit A and incorporated herein by reference.
The settlement agreement provided for the division of the marital property between the parties. It included a provision that the parties would immediately place the marital home on the market for sale and make every effort to sell it before March 31, 1987. Ms. Judy Stokes was granted the right to occupy the marital home until it was delivered to a purchaser, but petitioner retained the right to use of the guest bedroom and kitchen as provided in the temporary order until the furniture and furnishings granted to him in the settlement agreement were removed. Paragraph 15 of the settlement agreement provided: The parties stipulate that this Agreement is entered into in full satisfaction and accord of all claims either party may have against the other, specifically including but not limited to all claims asserted or which could be asserted in the above-styled action. It is the intention of the parties that this Agreement shall be incorporated by reference into the terms of the Final Judgment and Decree in the above-styled *466 action, and that notwithstanding such incorporation the Agreement shall survive and be enforceable independently thereof. Except as otherwise expressly stated herein, all of the provisions of this Agreement shall be binding upon and shall inure to the benefit of the parties, their respective heirs, next of kin, executors, and administrators.
Petitioner made three payments to Ms. Judy Stokes in 1987 of $ 4,800 each, totaling $ 14,400. In the notice of deficiency issued to petitioner and Carol C. Stokes for the taxable years 1987 and 1988, respondent disallowed the deduction for alimony in the amount of $ 14,400 claimed by petitioners on their joint return for 1987 stating that they had not established that the amount was deductible as alimony. Petitioners contend that the payments made in 1987 constituted alimony under the provisions of section 71(b) and therefore are deductible under section 215. Sec. 215(a) provides for the deduction by an individual of an amount equal to alimony or separate maintenance payments as defined in section 71 paid during the taxable year. Section 71(b)[2] defining alimony or separate maintenance payments requires: (1) That the payments be received *467 under a divorce or separation agreement; (2) that the agreement does not contain a provision that the payments are not deductible; (3) that the payor and payee spouse not be members of the same household; and (4) that there is no liability to make such payments after the death of the payee spouse. *468 Respondent contends that under the agreement incorporated into the divorce decree in this case, payments might be required to be made after the death of Ms. Judy Stokes, the payee spouse. [3]
*469 Since the divorce decree was issued by a Georgia court, both parties recognize that the settlement agreement which was incorporated therein must be interpreted under Georgia law. Therefore, whether the payments under the agreement would continue after the payee spouse's death depends on whether Georgia law would so interpret the final divorce decree. Under Georgia law, "Alimony is an allowance out of one party's estate, made for the support of the other party when living separately." Ga. Code Ann. sec. 19-6-1 (Michie 1991). A divorce decree and document relevant thereto are to be interpreted "according to the usual rules for the construction of contracts, the cardinal rule being to ascertain the intention of the parties." Gray v. Higgins, 421 S.E.2d 341, 344 (Ga. Ct. App. 1992) (quoting Cousins v. Cousins, 315 S.E.2d 420, 422 (Ga. 1984)). It is clear that Georgia law allows for alimony and similar payments to be made beyond the life of the payee spouse. Donaldson v. Baldwin, 164 S.E.2d 141, 143 (Ga. 1968); Ramsay v. Sims, 71 S.E.2d 639, 643 (Ga. 1952); *470 Hughes v. Hughes, 314 S.E.2d. 920 (Ga. Ct. App. 1984). Georgia law defines permanent alimony as being either lump-sum or periodic alimony. Winokur v. Winokur, 365 S.E.2d 94, 95 (Ga. 1988). In that case the court stated that while periodic alimony terminates at the death of either party, lump-sum alimony in installments over a period of time does not. Lump-sum alimony may either be paid at once or in specified installments. Stone v. Stone, 330 S.E.2d 887, 889 (Ga. 1985). In Winokur v. Winokur, supra, at 96, the Supreme Court of Georgia stated the distinction between periodic and lump-sum alimony as follows: If the words of the documents creating the obligation state the exact amount of each payment and the exact number of payments to be made without other limitations, conditions or statements of intent, the obligation is one for lump sum alimony payable in installments. * * *
In the present case, there are two documents that establish the duty of petitioner. First, the temporary order required petitioner to pay Ms. Judy Stokes $ 4,800 per month *471 beginning in October 1985, and to continue paying this sum each month "until further order of the court". Second, under the settlement agreement, these payments were to continue until March 31, 1987. Thus, as of the date of the final divorce decree, May 14, 1986, the number of payments as well as the amount of each payment were specific, so that the Winokur test was satisfied for the calendar year 1987. Since the payments in 1987 met the requirements under Georgia law for a lump sum payable in installments, they would have been payable to Ms. Judy Stokes' estate in the event of her death. As such, they do not constitute alimony under section 71(b)(1)(D). Petitioners have not met their burden of proving their intent to the contrary. In fact, the agreements show an intent that the payments are to continue after death. Petitioners first argue that the 1987 payments were temporary alimony, in which case the right to receive such payments would end at the death of the payee spouse. Butler v. Hicks, 189 S.E.2d 416, 419 (Ga. 1972). Temporary alimony is separate and distinct from periodic or permanent alimony. Temporary alimony is effective only *472 during the pendency of a divorce proceeding, and, upon final judgment, payments of temporary alimony cease by operation of law. Chatsworth Lumber Co. v. White, 107 S.E.2d 827, 828 (Ga. 1959). An order granting temporary alimony during pendency of a divorce action terminates when the divorce becomes final. Tillotson v. Tillotson, 182 S.E.2d 114 (Ga. 1971). In the present case, the payments were scheduled to be paid and in fact were paid over a number of months after the final divorce had been granted. Thus, the payments made in 1987 were not in the nature of temporary alimony as defined under Georgia law, and the obligation to make payments did not end at the payee's death by operation of law. Petitioners also argue that the payments were periodic, thus ending petitioner's obligation at Ms. Judy Stokes' death. Petitioners rely on Gray v. Higgins, 421 S.E.2d 341 (Ga. Ct. App. 1992), for this proposition. In Gray v. Higgins, the husband was required to pay insurance premiums on a $ 25,000 life insurance policy under the terms of a settlement agreement. Higgins is distinguishable *473 because both the number of life insurance premium payments and the total amount of payments were contingent on the length of the payor husband's life at the time of the divorce decree, and thus would not have met the definition of a lump-sum payment as defined in Winokur v. Winokur, supra.Sapp v. Sapp, 378 S.E.2d 674, 676 (Ga. 1989). In the present case, the monthly payments were not contingent, but fixed, and thus in the nature of lump-sum alimony payable in installments. Further, paragraph 15 of the settlement agreement that provides for the payments to the payee's heirs evidences that the parties intended for this obligation to continue beyond the death of the payee. The settlement agreement clearly states that the temporary order is incorporated into the settlement agreement, so paragraph 15's survivorship clause would govern the monthly payments. Petitioners argue that paragraph 15 of the settlement agreement is mere "boiler plate language" and should not be construed as continuing the monthly payments past the payee's death. However, this argument goes against the clear wording of the settlement agreement, *474 and without evidence to the contrary, paragraph 15 serves as further evidence that the parties intended for the payments to continue after the death of the payee spouse. Therefore, we hold that petitioners are not entitled to alimony deductions for the calendar year 1987, as petitioners have not met their burden of proving that the parties to the settlement agreement intended for the 1987 payments to end at the payee's death. Respondent further argues that the criterion under section 71(b)(1)(C) is not satisfied since petitioner had the right of use of the guest room and kitchen of the home, which right might have extended into 1987 and been exercised during that year. However, since we have concluded that petitioners failed to prove that the criterion under section 71(b)(1)(D) was satisfied, we do not reach this issue. The parties have stipulated to a decision that may be entered by the Court, taking into account the issues disposed of by settlement, if we hold for respondent on the issue presented for decision herein. Decision will be entered in accordance with the agreement of the parties and our holding herein for respondent. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. Judy F. Stokes filed a separate petition for 1984 and 1985, which case has been disposed of by agreement of the parties.↩
2. Sec. 71(b) reads in part as follows: (b) ALIMONY OR SEPARATE MAINTENANCE PAYMENTS DEFINED. -- For purposes of this section -- (1) In General. -- The term "alimony or separate maintenance payment" means any payment in cash if -- (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) The divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.↩
3. At the time of the entry of the final decree of divorce on May 14, 1986, at the end of sec. 71(b)(1)(D) was "and the divorce or separation instrument states that there is no such liability." The Tax Reform Act of 1986, Pub. L. 99-514, sec. 1843(b), 100 Stat. 2085, 2853, enacted Oct. 22, 1986, deleted this phrase effective as if it were included in the provisions of the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422(a), 98 Stat. 494, 795, to which it related and which enacted sec. 71(b)(1) as it now exists after the amendment by the Tax Reform Act of 1986, supra↩. Respondent argues that the intent of the parties that the payments extend beyond the death of the payee spouse is shown by the absence of a statement in the agreement that it did not extend beyond the payee's death at a time such a statement would have been required indicates an intent that payments would have been required after the death of the payee spouse. We have not considered this argument in reaching our conclusion in view of the retroactive amendment to the statute.