39573. BROMLEY v. BROMLEY.

DECIDED SEPTEMBER 24, 1962.

*Woodruff, Latimer, Savell, Lane & Williams, Edwards L. Savell,* for plaintiff in error.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Harold E. Abrams, Richard A. Newton,* contra.

BELL, Judge. ■ Count 1 of the petition seeks to recover actual and punitive damages by reason of the alleged conversion of plaintiff's corporate stock.

Exhibit "A" attached to the petition is captioned an "assignment agreement" and recites that the plaintiff sells, assigns, and transfers to the defendant the shares of stock, to have and to hold as collateral security, until there has been full payment of the principal and interest on two designated promissory notes and such other notes or indebtedness as may then exist or may later accrue and become payable to the defendant by the plaintiff and/or the corporation whose stock was thus transferred.

The plaintiff contends that the assignment was void as against public policy insofar as it permitted the defendant to become the absolute owner without notice, sale, legal process or further right of redemption.

We agree that this provision for forfeiture without any right of redemption in the event of any default is invalid. However, the invalidity of this provision is not fatal to the enforceability of the security instrument. The equity of redemption which attaches to mortgages and other security devices in favor of the debtor will still apply to this instrument.

The plaintiff contends that this security instrument created a pledge, and that an assertion by the defendant as pledgee of a claim of title to the stock to the exclusion of the plaintiff pledgor constitutes a conversion. If the instrument is in reality a pledge, the plaintiff's position would be correct. *Waring v. Gaskill*, 95 Ga. 731 (22 SE 659). But as we construe this instrument, which uses words of sale, it is not a pledge but instead is a bill of sale of personal property to secure a debt. See *Hill v. Marshall*, 18 Ga. App. 652 (1) (90 SE 175); and *Keel v. Attaway*, 65 Ga. App. 172 (15 SE2d 562).

A sale is distinguishable from a pledge or a pawn in that a sale passes title while in a pawn, possession passes, but not title. *Gilbert v. State*, 16 Ga. App. 249 (85 SE 86). The general property in the goods remains in the pledgor. *Code* § 12-602. The pledge creates a lien upon property but not title to it. "The legal title to property pledged remains in the pledgor . . . with merely an authority to the pledgee to sell in case of default." *Ullman v. Brunswick Title Guarantee &c. Co.*, 96 Ga. 625, 629 (24 SE 409). Since words of sale were used in the security instrument by which the plaintiff's stock was transferred to the defendant, we think that there was not a pledge but a bill

of sale to secure debt. A party seeking a reconveyance of the legal title which is passed to a creditor under a security instrument must pay or tender the debt before he will be entitled to the property. *Thomas v. Stedham*, 208 Ga. 603, 606 (68 SE2d 560), and cases there cited; and *Payne v. Power*, 140 Ga. 759 (79 SE 771).

However, the plaintiff has not alleged tender or payment, but on the contrary has alleged by the amendment to the petition that he requested the defendant to furnish him a statement of any indebtedness and that the defendant in response to the request furnished a statement of indebtedness showing $48,544.71. The defendant allegedly refused to surrender his rights under the security agreement except upon payment of the latter sum, which the record shows included debts other than those secured by the bill of sale to secure debt. The plaintiff contends that this demand for payment of sums other than those covered by the security agreement excuses the necessity for tender and makes the defendant liable for conversion by his assertion of ownership of the stock in his possession.

The amended petition specifically alleges that the defendant told the plaintiff he would not surrender his alleged rights under the security instrument except upon payment of the entire sum listed in the statement of indebtedness attached as Exhibit "C" to the amended petition. This listing of the debts for which the defendant was insisting he was entitled to retain the plaintiff's stock clearly includes items which were not secured by the bill of sale to secure debt.

As we interpret the allegations of the amended petition, the defendant's action in claiming the right to retain the property for indebtednesses not secured by the agreement between the parties, eliminated the necessity for the plaintiff to tender or to allege a tender to the creditor. Where the party to whom money is payable indicates that he will not accept it if tendered, no tender is needed. *Turner v. Williams*, 29 Ga. App. 751, 752 (6) (116 SE 553); *Ansley v. Hightower*, 120 Ga. 719 (4) (48 SE 197). Tender.before suit is waived where the party entitled to payment by conduct or declaration shows that if a tender should be made it would be refused. *Finney v. Blalock*, 206 Ga.

655 (58 SE2d 429). See also *Nickelson v. Owenby*, 208 Ga. 352 (66 SE2d 828).

Under the petition as amended, the plaintiff became entitled to the return of the stock in December 1960, when the defendant's conduct eliminated the necessity of tender. This had the effect of divesting the defendant's right to retain the stock as security for the loan. Tender terminates the right to retain the security given for the debt. *Bowman v. Poole*, 212 Ga. 261 (91 SE2d 770). We feel that where tender is excused, the debtor also becomes entitled to the return of the security. The elimination of the need to tender should have the same effect as making tender. The plaintiff, therefore, became entitled to the return of the stock held as security in December 1960. The assertion of ownership by the defendant of the collateral by letter dated January 5, 1961, was a conversion of the plaintiff's stock for which the defendant became liable. Possession of property with a claim of title adverse to that of the true owner is sufficient evidence of a conversion. *Maxwell v. Harrison*, 8 Ga. 61 (52 AD 385). Any distinct act of dominion wrongfully asserted over another's property in denial of his right or inconsistent with it is a conversion. *Heller v. Samuel Silver, Inc.*, 30 Ga. App. 488 (3) (118 SE 449).

Count 1 of the plaintiff's petition stated a cause of action. ■ The last paragraph of the assignment agreement is as follows: "In the event of any default in payment of principal and/or interest, without further notice or right of redemption and without any required legal processes, the said C. L. Bromley may, at his option and pleasure, immediately become the legal owner of the said eight hundred (800) shares of the common capital stock of Animal Hospital, Inc., in which case an amount equal to the then existing book value of the said stock, as reflected at the close of the last preceding fiscal accounting period of Animal Hospital, Inc.—not to exceed a par share value of six and 25/100 dollars ($6.25)—shall be credited to or against the then existing total of the indebtedness due to C. L. Bromley by C. L. Bromley, Jr., and/or Animal Hospital, Inc., to be applied, first to or toward the liquidation of any existing indebtedness due C. L. Bromley by the Animal Hospital, Inc., and then, secondly, to any existing indebtedness due to C. L. Bromley

by or from C. L. Bromley, Jr.,—after which the residue or remaining total indebtedness balance of principal and interest shall continue to exist and become immediately due and payable to C. L. Bromley."

The defendant urges that this provision granted him a valid option to purchase the plaintiff's shares of stock; that the defendant has exercised the option, the title has vested in him; and there is, therefore, no liability for conversion.

We do not agree.

The common law has jealously guarded the mortgagor's equity of redemption which may not be "fettered" or "clogged." Osborne on Mortgages, 1951 Ed., §§ 96-99, p. 227 et seq. In general any provision in the mortgage at its inception which takes away the right of the mortgagor to exercise his equity of redemption is void. The mortgagor cannot by the initial agreement bind himself not to exercise his equity to redeem the property. "A direct agreement, part of the original transaction, whereby a chattel mortgagor, a pledgor, or a mortgagor of personal property forfeits, or clogs, or fetters his equity of redemption, is void." 24 ALR 822, 825, Sec. III (b), and authorities there cited. The mortgagor cannot enter into a contract with a mortgagee at the time of the loan for purchase of the equity of redemption at a fixed sum. Wilson v. Fisher, 148 N.C. 535 (62 SE 622); note on Jennings v. Ward, 18 English Ruling Cases, 366; 6 British Ruling Cases, 435, and cases there cited. In Georgia, this question of forfeiture does not seem to have arisen in the case of a chattel mortgage or bill of sale to secure debt, but it has arisen in the case of a pledgor. *Evans v. Odum,* 52 Ga. App. 453 (183 SE 669). In *Evans* this court held that a clause in the instrument providing that if the debt were not paid and the property redeemed by a stated date the property would become the creditor's absolutely, was not a valid release or a waiver by the debtor of his right of redemption. Pledges, chattel mortgages and bills of sale to secure debt are treated similarly by the law and equity; certainly this is true insofar as any forfeiture of the equity or right of redemption is asserted or may be involved.

We hold that the provision in the contract authorizing the creditor to take title to the property of the debtor at one or

.

the other of two values was an attempt to give the creditor an illegal advantage in that it would have placed the property out of the power of the debtor to redeem at the uncontrolled option of the creditor. This provision, therefore, was void as an attempt to forfeit the debtor's equity of redemption.

The defendant urges that the decision in *Reid v. Caldwell*, 110 Ga. 481 (35 SE 684) is authority which prevents him from being held liable for conversion. The *Reid* case is distinguishable from the present case since in *Reid* there was no mortgaging or pledging of personal property for a debt but rather an instalment purchase by the plaintiff from the defendant of capital stock of a lumber company.

The petition alleges that the defendant has acted in such a manner as to amount to a refusal of tender which divested the lien of the security device. Following this, the defendant allegedly exercised dominion and control over the property claiming it as his own when he no longer had the right to retain it even as security for a debt. These allegations are adequate to charge an actionable conversion of the plaintiff's property.

■ Count 2 of the petition charged that the defendant as manager of the corporation, Animal Hospital, Inc., personally owned 20% of the stock and held the remaining 80% transferred under the security instrument by the plaintiff to the defendant for a total holding of 100% of the stock; that the defendant was at once the secretary of the corporation, a member of its board of directors, and its business manager; that the defendant had no authority to discharge the plaintiff from his employment as director of professional services with the corporation; and that the defendant converted plaintiff's stock for the purpose of wrongfully and maliciously inducing the corporation to discharge the plaintiff; that defendant's wilful conversion and wilful interference with plaintiff's employment were wanton and malicious; and that the defendant by inducing the corporation to terminate the plaintiff's services caused the loss of salary in a sum alleged.

The plaintiff's theory is that Count 2 sets forth a cause of action under *Code* § 105-1207, which provides that in all cases one who maliciously procures an injury to be done to another, whether it is an actionable wrong or a breach of contract, is a

joint wrongdoer and may be sued either alone or jointly with the actor. A malicious and wrongful interference with the employment by another is actionable even though the employment is not for any definite term. *Ott v. Gandy*, 66 Ga. App. 684 (19 SE2d 180).

The defendant urges that since he held the legal title to all the outstanding shares of stock of the corporation and had the right to vote the stock, this carried with it the right to discharge any employee as the owner of all the stock might choose. If, as held in Division 1, the defendant was not legally in possession and entitled to vote 80% of the stock, he was wrongfully in control of the corporation, and while in wrongful control, he brought about the plaintiff's discharge from his employment. Under these circumstances, he should be held liable for this alleged improper expulsion of the plaintiff from employment. Whether a third person wrongfully induces the employer to discharge an employee or one wrongfully in control of the company maliciously causes the discharge of the employee, the wrong and the damage are one and the same. Cf. *Employing Printers Club v. Doctor Blosser Co.*, 122 Ga. 509 (50 SE 353, 69 LRA 90, 106 ASR 137, 2 AC 694).

Count 2 stated a cause of action.

■ Count 3 of the petition charged that the defendant by the use of the stock of the plaintiff and the control of the corporation thus gained interfered with the plaintiff's right to operate, control, use and enjoy the hospital as a going business. Since, under the allegations of the petition, the plaintiff owned and had the right to 80% of the stock and was wrongfully excluded from the ownership of the stock and the operation and control of the corporation, we think Count 3 stated a cause of action.

A tort is any unlawful violation of a private legal right other than a mere breach of contract. The defendant has allegedly acted tortiously in converting the plaintiff's stock and excluding him from the control of the corporation. "For every right there shall be a remedy . . ." *Code* § 3-105.

The trial court erred in sustaining the general demurrers to counts 1, 2 and 3 of the petition.

*Judgment reversed. Felton, C. J., and Hall, J., concur.*