A98A0157. LEWIS BROADCASTING CORPORATION v. PHOENIX BROADCASTING PARTNERS et al.

(502 SE2d 254)

Blackburn, Judge.

Lewis Broadcasting Corporation appeals the trial court's grant of summary judgment to Phoenix Broadcasting Partners on Lewis' suit for specific performance of an option agreement. For the reasons discussed below, we affirm.

In January 1994, Phoenix's predecessor-in-interest, Gulf Atlantic Media of Georgia, Inc., borrowed $650,000 from Lewis. The purpose of the loan was to enable Gulf to finance a settlement with its lender and to avoid a forced sale of its two Savannah radio stations, for which a receiver had been appointed. All parties were represented by counsel in the negotiation and execution of the loan documents. Gulf executed a $650,000 promissory note in favor of Lewis, which note was to mature one year after the assignment from the receiver to Gulf of the FCC licenses to operate the stations, but no later than July 1, 1995. Gulf executed a security agreement granting Lewis a security interest in all of the operating assets of the two stations except their FCC licenses, which under the rules of the FCC could not be transferred or assigned without FCC approval. The agreement provided that the licenses would become part of the collateral in the event of any rule change by the FCC allowing a security interest to be given in such licenses.

As part of the transaction, Gulf also executed an option agreement, giving Lewis the option to purchase the radio stations' assets, including the FCC licenses (subject to FCC approval), upon the occurrence of a default under the loan. The option price was $650,000, less any amount outstanding on the loan. Phoenix also agreed to pay a $100,000 consultation or noncompetition fee to Gulf's principal, Carl Marcocci, and his wife upon exercise of the option. This option agreement was executed on January 19, 1994, the same day as the security agreement.

Phoenix subsequently acquired all of Gulf's assets and assumed its obligations under the loan documents. After Phoenix defaulted on

the loan, Lewis gave notice of its intent to exercise the option to purchase the radio stations. When Phoenix refused to perform under the option agreement, Lewis filed this action seeking payment of the loan and specific performance of the option agreement. The trial court granted Phoenix's motion for summary judgment on the specific performance claim, finding that the option agreement was an impermissible restraint on the debtor's right to redeem its collateral upon default.

1. Lewis contends that the trial court erred in finding the option agreement void and granting summary judgment to Phoenix on Lewis' claim for specific performance of such agreement.

The facts of this case are similar to *Bromley v. Bromley*, 106 Ga. App. 606, 611 (2) (127 SE2d 836) (1962), where a borrower assigned to the lender as security for a loan certain shares of stock owned by the borrower. Id. at 608. The assignment agreement also contained a provision allowing the lender, upon default by the buyer, to purchase the stock by crediting a set amount against the outstanding indebtedness. Id. at 610. In holding such a provision invalid, we stated as follows: "The common law has jealously guarded the mortgagor's equity of redemption which may not be 'fettered' or 'clogged.' [Cit.] In general any provision in the mortgage at its inception which takes away the right of the mortgagor to exercise his equity of redemption is void. The mortgagor cannot by the initial agreement bind himself not to exercise his equity to redeem the property. 'A direct agreement, part of the original transaction, whereby a chattel mortgagor, a pledgor, or a mortgagor of personal property forfeits, or clogs, or fetters his equity of redemption, is void.' 24 ALR 822, 825, Sec. III (b), and authorities there cited. *The mortgagor cannot enter into a contract with a mortgagee at the time of the loan for purchase of the equity of redemption at a fixed sum.* . . . Pledges, chattel mortgages and bills of sale to secure debt are treated similarly by the law and equity; certainly this is true insofar as any forfeiture of the equity or right of redemption is asserted or may be involved." (Emphasis supplied.) Id. at 611 (2).

*Bromley* thus stands for the proposition that an option to purchase collateral for a fixed price upon default, entered into at the time of the original loan transaction granting a security interest in such collateral, constitutes an impermissible attempt to defeat the debtor's right to redeem the collateral. This proposition is consistent with the Uniform Commercial Code, which provides that "the debtor or any other secured party may *unless otherwise agreed in writing after default* redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding, and preparing collateral for disposition, in arranging for the sale, and to the extent

provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses." (Emphasis supplied.) OCGA § 11-9-506. See also *Kellos v. Parker-Sharpe, Inc.*, 245 Ga. 130, 133 (2) (263 SE2d 138) (1980) (right to redeem collateral may be waived after default but not before).

Lewis argues that other jurisdictions have recognized an exception to the general rule, whereby a borrower may validly waive the right of redemption by entering into a subsequent agreement supported by additional consideration. See *Humble Oil &c. Co. v. Doerr*, 303 A2d 898 (N.J. 1973); *Ringling Joint Venture II v. Huntington Nat. Bank*, 595 S2d 180 (Fla. App. 1992). The validity of this exception has not been addressed by this Court or the Supreme Court of Georgia. However, such an exception is not inconsistent with the language in *Bromley*, which states that "any provision in the mortgage *at its inception* which takes away the right of the mortgagor to exercise his equity of redemption is void." (Emphasis supplied.) *Bromley*, supra at 611 (2).

Lewis contends that because the option agreement was executed as a separate document from the security agreement, it falls within this exception. This contention is without merit, however, as the loan documents clearly show that the option agreement was part of the initial loan transaction and constituted part of the consideration for Lewis' agreement to make the loan. See *Quintanilla v. Rathur*, 227 Ga. App. 788, 790 (1) (490 SE2d 471) (1997) (agreement may consist of multiple documents, and instruments executed at same time in course of single transaction should be read and construed together). Accordingly, the option agreement cannot be considered a "subsequent agreement" for purposes of coming within the exception, and it is therefore unnecessary to address whether or not such exception applies in Georgia.

For the above reasons, the trial court did not err in granting summary judgment to Phoenix on Lewis' claim for specific performance of the option agreement.

2. Lewis also argues that, even if the option agreement is not enforceable in its entirety, it should be enforceable with respect to the FCC licenses. Since the loan documents did not grant Lewis a security interest in the licenses, and hence Phoenix had no right of redemption in such licenses, Lewis contends that the option agreement cannot be considered an invalid restraint on the right of redemption with respect to the licenses.

This contention is without merit, as the option agreement is not severable in the manner Lewis desires. The option agreement purports to give Lewis the option to purchase all of Phoenix's operating assets, including the licenses, for a single amount. Nothing in the agreement gives Lewis the right to purchase less than all of Phoe-

nix's assets, or specifies the price applicable to a purchase of only the FCC licenses. Accordingly, the agreement is not severable and cannot be enforced only with respect to the licenses. See *Gray v. Higgins*, 205 Ga. App. 52, 56 (3) (421 SE2d 341) (1992).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED APRIL 7, 1998.

*Bouhan, Williams & Levy, Walter C. Hartridge, Timothy H. Edwards, Chamberlain, Hrdlicka, White, Williams & Martin, John W. Sognier*, for appellant.

*Oliver, Maner & Gray, James P. Gerard*, for appellees.