In re Michael LAMAR, Felicia
Lamar, Debtors.

Michael Lamar, Felicia
Lamar, Plaintiffs,

v.

Mitsubishi Motors Credit of America,
Inc., Defendant.

No. 99–12052.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

June 16, 2000.

Evita A. Paschall, Attorney at Law, Augusta, GA, for plaintiff.

David M. Wolfson, Attorney at Law, Valdosta, GA, for defendant.

## ORDER

JOHN S. DALIS, Chief Judge.

Michael and Felicia Lamar ("Debtors") seek turnover of a leased automobile which was repossessed by Mitsubishi Motors Credit of America, Inc. ("Mitsubishi"). Debtors included in their complaint a prayer for damages for Mitsubishi's alleged violation of the automatic stay. Judgment is entered for Mitsubishi.

Debtors and Mitsubishi executed a Vehicle Lease Agreement ("Lease") on February 16, 1999, for a forty-eight month lease of a 1999 Mitsubishi Galant, VIN 4A3AA46G0XE038531 ("Vehicle"). Although Debtors made initial monthly payments, they were not able to continue doing so and thus defaulted on the Lease. Debtors do not dispute that default occurred.

On August 9, 1999, Mitsubishi repossessed the Vehicle as allowed under the terms of the Lease.

On August 24, 1999, Debtors filed for bankruptcy relief under chapter 13, triggering the automatic stay of 11 U.S.C. § 362(a).

On August 27, 1999, Debtors received a document from Mitsubishi dated August 23, 1999, and titled "Notice of Sale (Lease)" ("Notice").

> The motor vehicle described above has been repossessed due to a default in the contract or an early termination and will be sold at a private sale not less than 10 days after the date shown above [August 23, 1999].

> You have the right to submit a cash bid for the purchase of the vehicle. The following charges are due from you: [amounts totaling $20,770.21]

> Any proceeds resulting from the sale of the vehicle will be applied to this Total Due Balance as required by your contract. You as Lessee, will be liable for any remaining amount due if the net sale proceeds are less than this Total Due Balance.

On August 31, Debtors brought this proceeding for turnover of the Vehicle.

On September 10, 1999, Mitsubishi moved to modify the automatic stay.

Mitsubishi alleges that it received a chapter 7 discharge notice on a different debtor named Lamar, and mistakenly attributed the discharge to Debtors. On October 21, Mitsubishi sold the Vehicle. On November 5, 1999, Mitsubishi's attorney wrote to Debtors' attorney, explaining these circumstances and offering, should turnover be ordered, to provide a vehicle of like condition, make and model. Debtors amended their complaint for turnover, claiming that Mitsubishi intentionally and willfully violated the automatic stay by selling the Vehicle. Pursuant to § 362(h), Debtors seek compensatory damages for the value of the Vehicle at the time of the sale, attorney fees, compensatory damages for the loss of the use of the Vehicle, and punitive damages.

The claims and arguments of the parties can be summarized as follows. Debtors claim to have rights in the Vehicle that survived repossession. Based on these rights, they seek turnover of the Vehicle and to assume the Lease as part of their chapter 13 plan. Debtors also claim that Mitsubishi violated the automatic stay by selling the Vehicle and seek an award of damages. Mitsubishi counters that repossession of the Vehicle terminated the Lease pre-petition. Therefore, the Lease cannot be assumed and there was no violation of the automatic stay. Mitsubishi is correct that the Lease terminated pre-petition. However, repossession alone did not effectuate termination, but repossession in conjunction with the Notice of Sale under the terms of the Lease did.

The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A) and (E), and 28 U.S.C. § 1344 (1994). Insofar as this complaint concerns property rights, property law of the State of Georgia is determinative. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979); *Leggett v. Morgan (In re Morgan),* 115 B.R. 399 (Bankr. M.D.Ga.1990).

In actions for turnover, the burden is on the party seeking turnover to demonstrate that the asset in question is part of the bankruptcy estate. *In re Paletti,* 242 B.R. 65, 66 (Bankr.M.D.Fla.1999); *Alofs Mfg. Co. v. Toyota Mfg., Ky., Inc. (In re Alofs Mfg. Co.),* 209 B.R. 83, 89–91

(Bankr.W.D.Mich.1997). When damages are sought under § 362(h) for violation of the automatic stay, the party seeking damages bears the burden of proof. *Tran-South Fin. Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (6th Cir. BAP 1999); *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D.Tenn.2000); *Boone v. F.D.I.C. (In re Boone)*, 235 B.R. 828, 833 (Bankr.D.S.C. 1998). Therefore, Debtors bear the burden of proof in all matters determined in this Order.[1]

Whether the Lease is a true lease or a disguised secured transaction must be first determined. Although both parties state that the Lease is a true lease, both have implied otherwise. Debtors concede that the Lease is a true lease, yet offer arguments which require a determination that the agreement is a disguised secured transaction. Mitsubishi offers arguments based on the Lease being a true lease, yet has submitted documentary evidence in which the transaction is referred to as a loan and the Vehicle as collateral.[2] True leases and secured transactions are governed by different provisions of Georgia law. O.C.G.A. §§ 11–2A–101 et seq. (Uniform Commercial Code—Leases) & 11–9–101 et seq. (Uniform Commercial Code—Secured Transactions). Therefore, I must determine whether the Lease is a true lease or a disguised secured transaction.

■ The Bankruptcy Code defines "security agreement" as an "agreement that creates or provides for a security interest." 11 U.S.C. § 101(50). "Whether a consignment or a lease constitutes a security interest under the Bankruptcy Code will depend on whether it constitutes a security interest under applicable State or local law." *Trax, Inc. v. Pledger Roy Wood (In re Pledger Roy Wood)*, 7 B.R. 543, 544 (Bankr.N.D.Ga.1980) (*quoting* H.Rep. No. 95–595, 95th Cong., 1st Sess. 1977, p. 314, U.S.Code Cong. & Admin.News 1978, pp. 5878, 6271). Both true leases and secured transactions are governed by the law of the jurisdiction in which the lessees or debtors reside. O.C.G.A. §§ 11–2A–106 & 11–9–103. Debtors are Georgia residents. Therefore, the nature and terms of the Lease are interpreted according to Georgia law.

■ The Lease is a true lease. O.C.G.A. § 11–1–201(37); *Summerhill Neighborhood Dev. Corp. v. Telerent Leasing Corp.*, 242 Ga.App. 142, 528 S.E.2d 889 (2000); *Carter v. Tokai Financial Services, Inc.*, 231 Ga.App. 755, 500 S.E.2d 638 (1998); *Mejia v. Citizens & Southern Bank*, 175 Ga.App. 80, 332 S.E.2d 170 (1985). In *Summerhill v. Telerent*, the Georgia Court of Appeals held that an agreement is a lease, and not a secured transaction, if two factors are present: one, the lessor clearly owns the property, the lessee has only the right to possess and use, and the lessor regains possession at the end of the agreement; two, the lessee's option to purchase at the completion of the lease requires payment of fair market value, not merely a nominal sum. 242 Ga.App. 142, 528 S.E.2d at 890. Here, the Lease shows that ownership remained with Mitsubishi, and Mitsubishi would re-

---

1. It is unsettled whether the standard of proof required for either turnover or violation of stay is a clear and convincing standard or the less stringent preponderance of the evidence standard. Turnover: *Paletti*, 242 B.R. at 66; *Alofs Mfg. Co.*, 209 B.R. at 89–91 (Bankr. W.D.Mich.1997). Violation of stay: *compare Boone*, 235 B.R. at 833; *In re Clarkson*, 168 B.R. 93, 95 (Bankr.D.S.C.1994) (standard is clear and convincing); *with In re Sharon*, 200 B.R. 181, 199 (Bankr.S.D.Ohio 1996); *Clayton v. King (In re Clayton)*, 235 B.R. 801, 806 n. 2 (Bankr.M.D.N.C.1998) (preponderance). Since Debtors fail to meet their burden of proof under either standard of evidence, the issue is not addressed here.

2. Mitsubishi's Proposed Findings of Fact and Conclusions of Law references both types of transactions. "Mitsubishi Motors holds a validly perfected first priority security interest in the subject 1999 Mitsubishi Galant four-door automobile subject to a true lease between the parties." An affidavit submitted describes the signer as a "Loan Service Manager," claims that Mitsubishi holds a security interest in the Vehicle, and accuses Debtors of failing to make installment payments.

gain possession of the Vehicle at the end of the Lease.

31. Option to Buy [in pertinent part]

... I [Debtors] acknowledge that this is a true lease and I will have no equity or other ownership rights in the Vehicle or its replacement parts unless I exercise the purchase option.

25. Vehicle Return

I [Debtors] will return the Vehicle to the place you [Mitsubishi] require, at the end of the Lease, at early termination, or at your direction if I default.

In addition, the Lease gives Debtors the option to purchase the Vehicle for its projected residual value at the end of the Lease, $9,788.48. This is not a nominal sum. For an automobile originally valued at $20,665.00 and driven for four years, the residual value appears to be fair market value. The terms of the Lease meet both requirements of *Summerhill v. Telerent* for a true lease.

In addition to the *Summerhill* analysis Georgia case law has analyzed O.C.G.A. § 11–1–201(37) to determine whether an agreement was a true lease. *Carter v. Tokai Fin. Serv.*, 500 S.E.2d at 640; *Mejia v. Citizens & Southern Bank*, 332 S.E.2d at 172.

O.C.G.A. § 11–1–201. General definitions.

(37) "Security interest" [as partially cited in *Carter*]

... Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and

(a) The original term of the lease is equal to or greater than the remaining economic life of the goods,

(b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,

(c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or

(d) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

O.C.G.A. § 11–1–201(37) (in pertinent part). The *Carter* court found that the disputed agreement was a lease because its initial term was five years, the lessee was not required to renew the lease or purchase the equipment at the end of the term, and the lessee did not have the option to renew the lease or purchase the property at the end of the term for mere nominal consideration. These factors are present here and place the Lease outside the statute's definition of a secured transaction.

Both the *Carter* and the *Mejia* courts also relied upon the 'best test' to determine the intent of an agreement with an option to buy: whether the option price is comparable to the market value of the property at the time the option is exercised. 231 Ga.App. 755, 500 S.E.2d at 640 (*citing Third Century v. Morgan*, 187 Ga. App. 718, 371 S.E.2d 262 (1988) and O.C.G.A. § 11–1–201(37)(x)); 175 Ga.App. 80, 332 S.E.2d at 172 (*citing Ford Motor Credit Co. v. Dowdy*, 159 Ga.App. 666, 284 S.E.2d 679 (1981)). As noted above, Debtors' option to buy was comparable to the projected fair market value of the Vehicle at the end of the Lease, when the option could be exercised. The *Carter/Mejia* 'best test' calls for the Lease to be considered a true lease, not a secured transaction.

According to Georgia case law and statute, the Lease is a true lease. The Debtors' claimed right of redemption must next be addressed in this context. Debtors

claim they retained a right to redeem the Vehicle from Mitsubishi after it was repossessed. According to Debtors, because the right to redeem existed at filing, either the right to redeem or the Vehicle itself became property of the bankruptcy estate. No right to redeem existed at filing, since none is provided for by statute or by the terms of the Lease.

■ Debtors cite O.C.G.A. § 11–9–506 as supporting a right of redemption. This statute is within Article 9, Uniform Commercial Code—Secured Transactions. The provisions of Article 9 do not apply to true leases. *Carter v. Tokai Fin. Serv.*, 231 Ga.App. 755, 500 S.E.2d 638, 640 (1998) (where agreement was a true lease, not a secured transaction, "the procedural safeguards of Article 9 of the UCC are inapplicable ... claims under this enumeration must fail.") *Tompkins v. Mayers*, 209 Ga. App. 809, 434 S.E.2d 798, 800 (1993) ("Article 9 of the Uniform Commercial Code does not govern a true lease but only one which disguises a secured transaction."); *Mejia v. Citizens & Southern Bank*, 175 Ga.App. 80, 332 S.E.2d 170 (1985) (where lease agreement was a true lease and not a secured transaction, compliance with O.C.G.A. §§ 11–9–504(3) and 10–1–36 was not required). Instead, leases are governed by Article 2A, Uniform Commercial Code—Leases. O.C.G.A. § 11–2A–102;[3] Ga.L.1993, p. 633, § 5;[4] *Carter v. Tokai Financial Services, Inc.*, 231 Ga.App. 755, 500 S.E.2d 638, 640 (1998) (agreement determined to be a true lease and not a secured transaction was not subject to Article 9 and was subject to Article 2A); *Colonial Pacific Leasing Corp. v. McNatt*, 268 Ga. 265, 486 S.E.2d 804, 807 (1997). Because the Lease here is a true lease, Debtors do not have a right of redemption under O.C.G.A. § 11–9–506 or any other section of Article 9.

Debtors erroneously rely upon other Georgia cases for support of a right to redeem. *Lewis Broadcasting Corp. v. Phoenix Broadcasting Partners*, 232 Ga. App. 94, 502 S.E.2d 254 (1998) (mortgagee had right to redeem collateral under Article 9); *Kellos v. Parker–Sharpe, Inc.*, 245 Ga. 130, 263 S.E.2d 138 (1980) (Article 9 provides right to redeem collateral); *American Honda Finance Corp. v. Littleton (In re Littleton)*, 220 B.R. 710 (Bankr. M.D.Ga.1998) (where debtor held title to car that secured retail installment contract, debtor retained a title interest in the repossessed car under Georgia law (UCC); property repossessed pre-petition, but not sold, became property of the estate.). Each of these cases concern a right to redeem based on an ownership interest or a provision of Article 9. However, in this case, Debtors did not hold title to the Vehicle, the Vehicle did not collateralize a loan, and the provisions of Article 9 do not govern. These cases do not support Debtors' claimed right of redemption.

Debtors also cite Eleventh Circuit Court of Appeals holdings that the right of redemption becomes property of the bankruptcy estate. *Charles R. Hall Motors, Inc. v. Lewis (In re Lewis)*, 137 F.3d 1280 (11th Cir.1998) (where secured creditor repossessed vehicle pre-petition, debtor's right of redemption under Alabama law became property of the estate but vehicle itself did not); *Commercial Federal Mortgage Corp. v. Smith (In re Smith)*, 85 F.3d 1555 (11th Cir.1996) (mortgagor/debtor's right of redemption under Alabama law becomes property of the estate but that right could not be modified by paying arrearage through Chapter 13 plan). The right of redemption in these cases was granted under Alabama law to owners of foreclosed-upon collateral. Since the facts of these cases are not comparable to the

---

**3.** O.C.G.A. § 11–2A–102. Scope

This article applies to any transaction, regardless of form, that creates a lease.

**4.** "This [article] shall become effective on July 1, 1993, for all lease contracts that are first made or that first become effective between the parties on or after that date."

facts here, these holdings are not controlling authority.

■ Debtors have not carried the burden of proof. A lessee does not have a right to redeem repossessed leased property, unless specifically granted by the individual lease. O.C.G.A. § 11–2A–503(1)[5]. Here, the Lease granted no right to redeem if Debtors were in default. Since Debtors had no right to redeem, their prayers for turnover, assumption of the Lease, and damages for violation of the stay can only be granted if they retained some *other* interest in the Vehicle which became property of their bankruptcy estate.

■ Turnover of property such as the Vehicle is provided for in the Bankruptcy Code.

§ 542. Turnover of property to the estate

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

§ 541. Property of the estate.

(a) The commencement of a case under section 301, 302 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located an by whomever held:

(1) [with exceptions which do not apply here] all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. §§ 542(a), 541(a)(1) (all cited in pertinent part). Under § 542(a), turnover may be granted only if the property to be turned over is included in § 363 or exempted under § 522. The Vehicle was not claimed as exempt nor was it exemptible. Section 363 refers to property of the estate, which is defined in § 541(a)(1) and requires Debtors have a legal or equitable interest in the Vehicle. Thus, Debtors must have an interest in the Vehicle at filing, which interest becomes property of the estate. Debtors only had an interest in the Vehicle if the Lease remained in effect at filing.

■ Along with turnover, Debtors seek to assume the Lease in their chapter 13 plan. Only *unexpired* leases can be assumed. *In re Williams*, 144 F.3d 544, 546 (7th Cir.1998); *In re Atkins*, 237 B.R. 816, 818 (Bankr.M.D.Fla.1999).

§ 1322. Contents of plan

(b) Subject to subsections (a) and (c) of this section, the plan may

(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;

§ 365. Executory contracts and unexpired leases

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. §§ 1322(b)(7) & 365(a). "Nothing remains for the debtor to assume once a lease has expired or is terminated." *In re Atkins*, 237 B.R. 816, 818 (Bankr. M.D.Fla.1999) (*citing Bell v. Alden Owners, Inc.*, 199 B.R. 451, 462 (S.D.N.Y. 1996)).

---

**5.** 11–2A–503. Modification or impairment of rights and remedies.

(1) Except as otherwise provided in this article, the lease agreement may include rights and remedies for default in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article.

■ Defendants claim that Mitsubishi willfully violated the automatic stay when it sold the Vehicle in October. The automatic stay is governed by § 362, and Debtors base their claim for damages on paragraph (h) of that section. I assume that Debtors regard the Vehicle as protected by the automatic stay under § 362(a)(3).

§ 362. Automatic stay [in pertinent part]

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—       ·

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . .

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(a)(3) & (h). The automatic stay would prevent Mitsubishi from selling the Vehicle only if an interest in the Vehicle became property of the Debtors' bankruptcy estate at filing.

Turnover could not be required, the Lease could not be assumed, and the stay could not have been violated unless Debtors' bankruptcy estate included some interest in the Vehicle under the Lease.

The bankruptcy estate could only include such interest if the Lease was in effect at filing. Thus, the final determination here is whether, at filing of the bankruptcy case, the Lease remained in effect or had previously terminated.[6]

■ Debtors acknowledge that they defaulted and the Vehicle was repossessed. Nonetheless, they maintain that actual termination of the Lease did not occur. Debtors look to item 34 of the Lease, Remedies for Default, to show that termination of the Lease was only one of several remedies that Mitsubishi could exercise upon default.

34. Remedies for Default.

If I [Debtors] default, you [Mitsubishi] may do any or all of the following without giving me advance notice unless required to by law:

(a) take any reasonable measure to correct the default or save a loss to you. I will pay you what it costs you,

(b) terminate this Lease and my right to possess and use the Vehicle,

(c) take possession of the Vehicle in any lawful manner,

(d) declare immediately due and payable my early termination liability as determined under Item 26, and

(e) pursue any other remedy under this Lease or the law.

To the extent allowed by law, I will pay your collection costs, such as repossession, storage, and legal costs, including reasonable attorneys' fees and court cost. I will pay you interest at the lesser of 12% per annum or the highest

---

6. Article 2A distinguishes between 'termination' and 'cancellation.'

> 11–2A–505. Cancellation and termination and effect of cancellation, termination, rescission, or fraud on rights and remedies. (1) On cancellation of the lease contract, all obligations that are still executory on both sides are discharged, but any right based on prior default or performance survives, and the cancelling party also retains any remedy for default of the whole lease contract or any unperformed balance.

> (2) On termination of the lease contract, all obligations that are still executory on both sides are discharged but any right based on prior default or performance survives.

O.C.G.A. § 11–2A–505(1) & (2). The distinction does not affect the outcome here. Both discharge all executory obligations, leaving no interest in place to become property of Debtor's bankruptcy estate. My use of the word 'termination' in this Order does not indicate whether or not "the cancelling party also retains any remedy for default of the whole lease contract or any unperformed balance."

rate permitted by state law on the early termination liability and related collection costs until paid.

Debtors knew that Mitsubishi had exercised one available remedy for default, repossession of the Vehicle, but maintain that no clear evidence establishes that the remedy of termination had taken place. The Notice, dated pre-petition although received by Debtors post-petition, states that, "The [Vehicle] has been repossessed due to a default in the contract or an early termination ..." Debtors claim that this is not definitive notice that Mitsubishi had terminated the Lease. However, Mitsubishi was not required to provide the Debtors with notice of termination. A lessor is only required to provide notice if so stated in the lease agreement.

O.C.G.A. § 11–2A–502. Notice after default

Except as otherwise provided in this article, applicable statutes, or the lease agreement, the lessor or lessee in default under the lease contract is not entitled to notice of default or notice of enforcement from the other party to the lease agreement.

O.C.G.A. 11–2A–502. Item 34 of the Lease states that Mitsubishi can pursue its remedies for default without advance notice. Therefore, lack of notice does not evidence that the lease was not terminated.

Debtors claim that the fact that a notice of sale was sent to Debtors indicates that the Lease had not been terminated. To the contrary, the notice establishes termination. The Notice makes clear that the Vehicle would be sold and that Debtors could submit a cash bid for its purchase. No option to resume or reinstate the Lease was offered. The option to submit a cash bid is far from a right to redemption. It is merely a right to bid along with any other potential buyers. Debtors have not shown that the Lease continued in effect at filing.

Mitsubishi claims that repossession of the Vehicle effected a termination of the Lease. A lease is defined as "a transfer of the right to possession and use of goods for a term in return for consideration." O.C.G.A. § 11–2A–103(j). Mitsubishi contends that because repossession terminates the right to possession and use, it simultaneously terminates a lease. *Thompson v. Doctor's Associates, Inc. (In re Thompson)*, 186 B.R. 301, 307 (Bankr. N.D.Ga.1995) (termination of real estate lease and dispossession of tenant resulted in transfer of right to possess and use back to landlord). The act of repossession alone does not establish lease termination. However, repossession coupled with notice to the lessee of the lessor's unequivocal intent to sell the leased property establishes lease termination as of the date of the notice of intent to sell. Mitsubishi was entitled by the terms of the Lease and by Article 2A to terminate the Lease. O.C.G.A. § 11–2A–523(1); Lease, Item 34. Pre-petition, Mitsubishi mailed the Notice stating that the Vehicle had been repossessed and would be sold, leaving Debtors no option to resume or reinstate the Lease. Mitsubishi could terminate the Lease, and must terminate the Lease prior to selling the Vehicle. Mitsubishi's notice of sale establishes termination of the Lease effective August 23, pre-petition. As of filing of bankruptcy relief Debtors retained no interest in the Vehicle or the Lease.

It is, therefore, ORDERED that judgment on the complaint for turnover and for damages from violation of the automatic stay filed by Michael and Felicia Lamar against Mitsubishi Motors Credit of America, Inc. be entered for Defendant. This judgment moots Mitsubishi's motion for relief from stay. No monetary award is made.