**In re Sylvia DASH, Debtor.**

**No. 01–59196(RTL).**

United States Bankruptcy Court,
D. New Jersey.

Oct. 11, 2001.

Andrew B. Finberg, Wizmur & Gordon, Marlton, NJ, for Debtor.

Stephen J. Amoriello, III, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Mt. Laurel, NJ, for Creditor, General Motors Acceptance Corporation.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

Sylvia C. Dash, debtor, moved to compel General Motors Acceptance Corporation ("GMAC") to turn over the 2000 Chevrolet Blazer which it repossessed on August 5, 2001. GMAC objected. The issue is when does a lease on a motor vehicle terminate for the purpose of establishing (a) whether the lease is property of the estate and (b) whether the lease is executory and unexpired so that it may be assumed?

This court has jurisdiction under 28 U.S.C. § 1334(a)[1], 28 U.S.C. § 157(a) and (b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July

---

1. All references to the U.S.C. and N.J. STAT. ANN. are to the West 2001 edition.

23, 1984 referring all cases under Title 11 of the United States Code to the bankruptcy court. Additionally, this is a core proceeding that can be heard and determined by a bankruptcy judge under 28 U.S.C. § 157(b)(2)(E).

For the reasons set forth below, this court concludes that, under the terms of the New Jersey Consumer Leasing Act, N.J. STAT. ANN. § 56:12–60 *et seq.* and of the lease itself, repossession alone did not terminate the motor vehicle lease. Repossession of the chattel and termination of the lease are separate remedies under the lease. N.J. STAT. ANN. § 56:12–65a requires the lessor to mail the lessee written notice in order to terminate the lease for the first or any subsequent default by the lessee, regardless of when or whether the lessor repossessed the vehicle. The lease remains property of the bankruptcy estate under 11 U.S.C. § 541 and remains unexpired and assumable under 11 U.S.C. § 365(a).

### FACTS

On May 31, 2000 the debtor Sylvia Dash and Agresta Cadillac, Chevrolet, Buick, agent and lessor, entered a Lease Agreement for a 2000 Chevrolet Blazer. Agresta assigned the lease and sold the vehicle to GMAC, which now owns the vehicle.

After the down payment, the debtor was required to pay $349.91 on the 30th of each month for thirty-five months. At a date unspecified, the debtor defaulted under the lease by failing to make monthly payments. On December 5, 2000 GMAC repossessed the vehicle. GMAC sent the debtor a letter dated December 6, 2000 titled "NOTICE OF CANCELLATION AND INTENT TO SELL." The letter advised the debtor that she was in default for failing to make monthly payments and that she had the right until December 21, 2000 to reinstate the lease by paying $1,282.40.

The letter further informed the debtor that the vehicle would be sold at public auction if she did not reinstate the lease by December 21, 2000. The debtor reinstated the lease on December 8, 2000 by making the required payment.

On February 20, 2001 the debtor filed her first voluntary petition in bankruptcy, Chapter 13, under Case Number 01–51798. On May 3, 2001 GMAC filed a Motion for Relief from the Automatic Stay because the debtor failed to maintain insurance on the vehicle and failed to make the required payments under the lease. The debtor and GMAC resolved the motion through a Consent Order for Assumption of Lease, which was entered on June 14, 2001. On July 11, 2001 the court dismissed Case Number 01–51798 because the debtor failed to make the required payments to the Chapter 13 trustee.

Once again the debtor fell behind in the payments due under the lease and, on August 5, 2001, GMAC repossessed the vehicle for the second time. On August 7, 2001 at 10:38 a.m. the debtor filed the instant voluntary petition in bankruptcy under Chapter 13. The debtor's attorney certified that he telephoned the attorney for GMAC on August 7, 2001 to advise him of the debtor's intention to file this petition. The debtor's attorney telephoned the attorney for GMAC again on August 8, 2001 to advise him that the petition had been filed and to provide a facsimile copy of the filed petition.

GMAC sent the debtor a letter dated August 7, 2001 which stated:

> Under the terms of your lease agreement, we have terminated your lease because you are in default.

The letter further stated that GMAC had repossessed the vehicle and would hold it until 9:00 a.m. on August 23, 2001, when it would be sold at public auction. The debt-

or demanded by telephone that GMAC return the vehicle, but GMAC refused.

The debtor argues that the lease is executory and unexpired. She states (without specifying a subsection) that the conduct of GMAC violates the automatic stay under 11 U.S.C. § 362. The debtor asserts that her lack of transportation may prevent her fulfilling her job requirements (although she does not specify what they are). She seeks an order requiring GMAC to return the vehicle.

GMAC argues that it terminated the lease by repossessing the vehicle before the debtor filed the petition. The lessor does not rely on its August 7, 2001 letter as the event that terminated the lease or claim that the letter was sent before the petition was filed. The lessor asserts that, as the lease has expired, the debtor may not assume or reject it. GMAC also declares that N.J. Stat Ann. § 56:12–65 does not require it to reinstate the lease a second time. GMAC asks the court to deny the debtor's motion for turnover.

### DISCUSSION

■ The filing of a bankruptcy petition creates an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The broad reach of § 541(a)(1) draws into the estate property not in the debtor's possession when the petition is filed. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205–206, 103 S.Ct. 2309, 2313–2314, 76 L.Ed.2d 515(1983).

11 U.S.C. § 542(a) requires an entity in control of property that the trustee can "use, sell, or lease under section 363" to turn the property over to the trustee. Following *Whiting Pools,* the court in *Carr v. Security Sav. & Loan Ass'n,* 130 B.R. 434, 436 (D.N.J.1991) required a secured creditor "in possession of repossessed col-

lateral in which a debtor in bankruptcy has an interest * * * to turn the collateral over to the debtor's trustee upon the filing of the bankruptcy petition." *In re Attinello,* 38 B.R. 609, 610 (Bankr.E.D.Pa.1984) (applying the result in *Whiting Pools* to a Chapter 13 case).

■ The Chapter 13 debtor has standing to bring an action for turnover of property. 11 U.S.C. § 1303 affords the debtor "the rights and powers of a trustee under §§ 363(b), 363(d), 363(e), 363(f) and 363(*l* )." *In re Coleman,* 229 B.R. 428, 429 (Bankr.N.D.Ill.1999). 11 U.S.C. § 363(b) and (d) allow the debtor, in the shoes of the trustee, to use, sell or lease property of the estate if she provides adequate protection to the lienholder. The debtor "succeeds to the mandate" under 11 U.S.C. § 542(a) "that compels delivery of property that is usable" under 11 U.S.C. § 363. *In re Sharon,* 234 B.R. 676, 687 (6th Cir. BAP 1999).

■ This case requires the court to decide whether the lease between the debtor and GMAC was property of the estate under 11 U.S.C. § 541(a) when the debtor filed her petition for bankruptcy. With regard to leased property, 11 U.S.C. § 541(a) must be read together with § 365(a) which affords the trustee the right to assume (or to reject) an unexpired lease of the debtor:

> (a) Except as provided in * * * subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a). If a lease is unexpired, it may be assumed or rejected under 11 U.S.C. § 365(a), and the unexpired lease will be property of the estate under 11 U.S.C. § 541(a). The term "unexpired" is not defined in the Bankruptcy Code. In

*In re DiCamillo,* 206 B.R. 64, 67–68 (Bankr.D.N.J.1997) the court adopted the definition formulated in *In re Morgan,* 181 B.R. 579, 583 (Bankr.N.D.Ala.1994) by reference to *Black's Law Dictionary* 579 (6th ed.1990). The court in *In re Morgan* concluded that "the word 'expired' denotes the natural or inevitable end to a contract or lease by lapse of time * * *." *In re Morgan,* 181 B.R. at 584. In this case, if the motor vehicle lease had not been terminated prepetition, it would be an unexpired lease within the meaning of 11 U.S.C. § 365(a) and be property of the estate under 11 U.S.C. § 541(a).

■ In New Jersey motor vehicle leases are controlled by N.J. STAT. ANN. § 12A:2A–101 *et seq.,* "Uniform Commercial Code—Leases" ("UCC–Article 2A") and by N.J. STAT. ANN. § 56:12–60 *et seq.,* "Consumer Protection Leasing Act" ("the Consumer Leasing Act").[2] Both of these statutes plus the lease itself must be examined to determine whether repossession alone was sufficient to terminate this lease.

### UCC–Article 2A

N.J. STAT. ANN. § 12A:2A–501 states that the lease and UCC–Article 2A set forth the conditions and remedies for default, including self-help. N.J. STAT. ANN. § 12A:2A–503 provides that the remedies in the lease may exceed the remedies set forth in UCC–Article 2A. The Uniform Commercial Code does not require the les-

sor to give the lessee notice of default or of the lessor's intention to enforce the lease:

#### 12A:2A–502. Notice after default

Except as otherwise provided in this chapter or the lease agreement, the lessor or lessee in default under the lease contract is not entitled to notice of default or notice of enforcement from the other party to the lease agreement.

N.J. STAT. ANN. 12A:2A–502. However, UCC–Article 2A provides that certain statutes and case law, in case of conflict with UCC–Article 2A, control the operation of the lease:

#### 12A:2A–104. Leases subject to other law

(1) A lease, although subject to this chapter, is also subject to any applicable:
* * *
(c) consumer law of this State, both decisional and statutory.

(2) In case of conflict between the provisions of this chapter, other than sections 12A:2A–105, 12A:2A–304(3) and 12A:2A–305(3) [3], and any law referred to in subsection (1), the provisions of that law control.

N.J. STAT. ANN. § 12A:2A–104. The New Jersey Consumer Leasing Act, N.J. STAT. ANN. § 56:12–60 *et seq.,* which "sets standards regarding motor vehicle leases exceeding 120 days," meets the criteria of a controlling statute under N.J. STAT. ANN. § 12A:2A–104(1)(a) and (1)(c).

---

**2.** The federal Consumer Leasing Act, 15 U.S.C. § 1667 *et seq.,* largely regulates disclosures about the calculation of the lessee's financial obligations. It does not address default, early termination, or remedies for default; it requires the lessor to give the lessee the following written statement of these events:

**§ 1667a. Consumer lease disclosures**
Each lessor shall give the lessee prior to the consummation of the lease * * * the following information * * *:

(11) a statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the term and the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination. 11 U.S.C. § 1667a.

**3.** (none of which applies in this case)

### Consumer Leasing Act

The Consumer Leasing Act sets forth the lessor's obligations when the lessee defaults:

**56:12–65. Default on lease; cancellation or termination of lease; notice required.**

a. *If a lessee is 15 days or more in default of the periodic payments due on the lease and the lessor wishes to declare a default and cancel or terminate the lease, the lessor shall personally deliver to the lessee or send by first class, certified mail at the lessee's last known address as shown on the records of the lessor, a notice of cancellation.* A lessee who is in default under a lease solely for failure to make a payment required by the lease shall have the right to reinstate the lease, subject to the provisions of this section. *If the lessee has the right to reinstate the lease, the notice of cancellation shall provide that the lessee has 15 days to reinstate the lease* by paying all past due periodic payments, late fees and other amounts due under the lease, and, *if the motor vehicle has been repossessed,* the cost to the lessor of repossessing, storing and transporting the motor vehicle. * * * Upon payment with the 15–day period to the lessor of the amounts due, the lessor shall reinstate the lease as if the lessee had not been in default of payment. *The lessor shall not be required to reinstate a lease more than once during term of the lease.* The lessee has no right to reinstatement if the default is for any reason other than or in addition to the failure to make a payment required by the lease.

N.J. Stat. Ann. 56:12–65.a. (emphases added). The Consumer Leasing Act *requires* the lessor to mail a notice of cancellation to the lessee in default if the lessor wants to terminate the lease. The statute provides that, if the defaulting lessee is entitled to his one-time opportunity to cure, then the notice of cancellation shall contain additional information. The statute indicates that the lessor may repossess the motor vehicle before mailing the notice of cancellation:

* * * [I]f the motor vehicle has been repossessed, the cost to the lessor of repossessing, storing and transporting the motor vehicle [are included in the amount to reinstate].

N.J. Stat. Ann. § 56:12–65.a. In every event, regardless of whether the lessee is entitled to cure the default, and regardless of whether the lessor has already repossessed the motor vehicle, the Consumer Leasing Act requires the lessor to mail the defaulting lessee written notice of cancellation.

The lease contains no notice requirements for the lessor if the lessor defaults. In particular, the lease is silent as to the lessor's obligation under the Consumer Leasing Act to mail the defaulting lessee a notice of cancellation if the lessor wants to declare a default and to cancel or to terminate the lease. To the extent that the lease is not in compliance with this statute, the Consumer Leasing Act controls the enforcement of the GMAC lease. N.J. Stat. Ann. 56:12–65.a.

### The Lease

The lease at paragraph 19 describes the acts or omissions which constitute default by the lessee and sets forth the lessor's remedies:

**19. DEFAULT.**

*You will be in default if any of these things happens:*

—You do not pay on time.

—You made a material misrepresentation when you applied for this lease.

—You start a bankruptcy, receivership, or insolvency proceeding or one is started against you or your property.

—*You break any other agreements in this lease.*

—You do anything the law says is a default.

If you are in default only because you paid late or not at all, the law may allow you to reinstate the lease. If you do, you will no longer be in default.

Otherwise, if you are in default, we may:

—End this lease and require you to pay the early end charge.

—Take the vehicle from you without demand. If the law permits, we may go on your property to take the vehicle.

—Sue you for damages and to get the vehicle back.

—Pursue any other remedy the law gives us.

We will exercise our rights without breach of the peace, at reasonable times and places, in a reasonable way, as the law permits. * * * You will pay our reasonable expenses of our taking these actions as the law allows. These expenses may include expenses of taking and storing the vehicle and attorney's fees and court costs.

Lease, paragraph 19 (emphases in original). The lease at paragraph 18 describes "early end" of the lease by either the lessee or the lessor:

**18. EARLY END.** You may end this lease anytime. We may end this lease if

you are in default or if the vehicle is a total loss.

Lease, paragraph 18.

In paragraph 19 of the lease, the bare language of the lease indicates that "ending the lease" and "taking the vehicle without demand" are discrete actions. The provisions at paragraph 18 for Early End ("We may end this lease if you are in default * * *") read in conjunction with paragraph 19 further indicate that "ending the lease" is a separate step from "taking the vehicle." Thus, repossession alone did not terminate the lease.

### CONCLUSION

Under the terms of the GMAC lease and the provisions of the New Jersey Consumer Leasing Act, N.J. Stat. Ann. § 56:12–65a., the GMAC lease was not terminated when the debtor filed her petition for bankruptcy. As the lease term expires on April 30, 2003, the GMAC lease was unexpired when the debtor filed for bankruptcy on August 7, 2001 and may be assumed under 11 U.S.C. § 365(a). The lease remained property of the estate under 11 U.S.C. § 541(a). The debtor will have the opportunity to cure arrears and assume the lease under 11 U.S.C. § 1322(b)(7).[4]

---

4. This holding is consistent with the result in *In re Lamar,* 249 B.R. 822, 830 (Bankr. S.D.Ga.2000), a case governed by UCC–Article 2A as adopted in Georgia, including the conflict provisions of Ga.Code Ann. § 11–2A–104. In *Lamar* the court determined that the act of repossession alone did not terminate an automobile lease, but that repossession "coupled with notice to the lessee of the lessor's

unequivocal intent to sell the leased property," *before* the lessee filed the Chapter 13 petition, served to terminate the lease effective the date of notice of the intent to sell. *Lamar,* 249 B.R. at 830. As the lessee held no interest in the lease or in the leased vehicle when he filed his petition, the lease was not part of the bankruptcy estate, and the vehicle was not subject to turnover under 11 U.S.C.

§ 542(a). New Jersey by contrast has a specific statute, N.J. STAT. ANN. § 56:12–65, which makes mailed notice the unequivocal prerequisite to declaring default and terminating the lease.